IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-02887-PAB-STV

JULIE CARLSON,

    Plaintiff,

v.

TOWN OF MOUNTAIN VILLAGE, COLORADO,
ANTHONY MORABITO,
CHRIS BROADY,
KIP ALBANESE,
NATHAN SANTOS,
TOM HALPER,
CHRIS WHITE,
JOSHUA M. KLIMASEWISKI,
ALISIA KLIMASEWSKI,
COLLEEN MAHONEY,
TELLURIDE R-1 SCHOOL DISTRICT, in its local capacity,
VIRGINIA ACHTER,
BRIAN Y. CARLSON,
APEX CONSTRUCTION, LLC, a Colorado Limited Liability Company,
CONNECT SKIS, LLC, a Colorado Limited Liability Company,
JOHN DOE DEFENDANTS ONE THROUGH FIVE,
MARY DOE DEFENDANTS ONE THROUGH FIVE, and
DOE INSTITUTIONAL DEFENDANTS ONE THROUGH FIVE,

    Defendants.

_____

# ORDER
_____

This matter is before the Court on the Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) of Defendants Town of Mountain Village and Chris Broady [Docket No. 72] and Defendant Brian Y. Carlson's Motion to Dismiss

Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Docket No. 75].

## I. BACKGROUND

This case arises out of the breakdown of the marriage between plaintiff and defendant Brian Carlson ("Carlson"). Plaintiff alleges that, due to "an unlawful and extortionate conspiracy . . . organized and implemented by her former husband," she was wrongfully jailed and otherwise prevented from having contact with her children. Docket No. 68 at 12, ¶ 10.[1] For purposes of this order, the Court only considers those allegations relevant to defendants Carlson, the Town of Mountain Village, Colorado ("Town"), and Chris Broady ("Broady"), the Town's Chief of Police.

On the evening of December 3, 2013, Carlson accused plaintiff of child abuse, felony burglary, trespassing, sexual assault, and theft in or near their home in Mountain Village, a resort town located in San Miguel County, Colorado. *Id*. at 4, 18, 34, ¶¶ 4B, 35-36, 123.[2] Carlson "just made up" these charges in order to put plaintiff in jail. *Id*. at 38, ¶¶ 137-38. The charges were supported by an unlawfully notarized arrest affidavit signed by defendant Anthony Morabito, at the time a police officer for the Town. *Id*. at 13, ¶¶ 12-13. Broady was the Chief of Police. *Id*. at 4-5, ¶ 4D. Plaintiff was arrested

---

[1] The Second Amended Complaint consists of 336 paragraphs of factual allegations spread across 74 pages. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim." However, the Court finds plaintiff's allegations sufficiently intelligible to resolve the motions to dismiss. The Court assumes plaintiff's allegations are true in considering the motions to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

[2] Although the complaint identifies 16 Boulders Way as the home plaintiff shared with Carlson, the complaint describes 14 Boulders Way as the alleged crime scene. *See* Docket No. 68 at 18, ¶¶ 35-36.

that evening. *Id*. at 27, ¶ 83. At the time of her arrest, plaintiff was on probation in Jefferson County, Colorado for a driving under the influence conviction in 2011. *Id*. at 16, ¶ 27. Plaintiff remained in custody after her arrest. *Id*. at 18, ¶ 35.

On May 1, 2014, plaintiff pled guilty to a probation violation in Jefferson County, based on the charges filed against plaintiff in San Miguel County. *Id*. at 39, ¶ 144. The District Court for Jefferson County, Colorado sentenced plaintiff to one year in the county jail. *Id*., ¶ 145. In early June, 2014, plaintiff entered an *Alford* plea in the San Miguel County case. *Id*. at 28, ¶ 90.[3] On August 16, 2014, plaintiff was released from custody. *Id*. at 18, ¶ 35.

On January 22, 2017, Carlson falsely reported to law enforcement that plaintiff was intoxicated. *Id*. at 64-65, ¶ 291. Plaintiff was arrested for alleged intoxication in violation of a protection order. *Id*. at 65, ¶ 293. Though this charge was ultimately dismissed, the arrest triggered another probation revocation in Jefferson County, which led to plaintiff's incarceration from May 25 to October 10, 2017. *Id*. at 45-46, 65, ¶¶ 182, 293. On December 30, 2017, defendants Kip Albanese and Nathan Santos, who are police officers employed by the Town, arrested plaintiff at a restaurant. *Id*. at 5, 53, ¶¶ 4E, 4F, 230. The officers – along with defendant Tom Halper, a deputy marshal in the nearby town of Telluride – "used brutal and entirely unnecessary physical force to deal with [plaintiff]." *Id*. at 5, 54, ¶¶ 4G, 235. The officers' conduct

---

[3] The complaint is inconsistent as to the date of plaintiff's guilty plea. *Compare* Docket No. 68 at 28, ¶ 90 (giving a guilty plea date of June 14, 2014) *with* Docket No. 68 at 28-29, ¶ 92 (guilty plea date of June 24, 2014). The complaint also does not explain what charges she pled guilty to.

3

was "abetted" by Broady, who "failed to exercise even remotely competent command supervision." *Id*. at 54, ¶ 236.

On December 3, 2017, plaintiff filed this action. Docket No. 1. In the Second Amended Complaint, plaintiff asserts five claims for relief: (1) damages for violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. §§ 1961-1968; (2) equitable relief for violations of RICO; (3) damages and forfeiture of property under the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. §§ 18-17-106 *et seq*.; (4) damages under the Civil Rights Acts of 1871, 42 U.S.C. §§ 1981-1988; and (5) injunctive relief. *Id*. at 74-81, ¶¶ 337-361.

Defendants Carlson, the Town, Broady, Kip Albanese, Nathan Santos, Colleen Mahoney, Telluride School District R-1, and Tom Halper have filed or joined motions to dismiss. Docket Nos. 72, 75, 101, 106, 124, 125, 129. Defendants Morabito, Joshua Klimasewski, Alisia Klimasewiski, Virginia Achter, Apex Construction, LLC, and Connect Skis, LLC have not entered appearances. Only the motions filed by Carlson, the Town, and Broady are before the Court at this time. Docket Nos. 72, 75.

## II. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(1)

A motion under Fed. R. Civ. P. 12(b)(1) is a request for the Court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of establishing that the Court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When the Court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1). *See Jackson v. City and*

4

*Cty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556 at *1 (D. Colo. Sept. 24, 2012).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). The court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1296 (10th Cir. 2003).

### B.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it

5

innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

### C.  The *Rooker-Feldman* doctrine

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Federal courts "must have a statutory basis for their jurisdiction." *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). Section 1257(a) of United States Code, Title 28 provides that only the Supreme Court – not lower federal courts – has jurisdiction to review "[f]inal judgments or decrees" rendered by a state court. *See* 28 U.S.C. § 1257(a); *Suasnavas v. Stover*, 196 F. App'x 647, 652 n.3 (10th Cir. 2006) (unpublished).

The *Rooker-Feldman* doctrine derives from the statutory bar in 28 U.S.C. § 1257(a). *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Suasnavas*, 196 F. App'x at 652 n.3. In *Rooker*, the Supreme Court concluded that federal district courts "could [not] entertain" litigation that sought to overturn a state court judgment because Congress vested only the Supreme Court with that authority. *Rooker*, 263 U.S. at 416; *Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1173 (10th Cir. 2018). The Supreme Court has cautioned that *Rooker-Feldman* applies in the "limited circumstances" where "the losing party in state court file[s] suit in federal court after the state proceedings end[], complaining of an injury caused by the state-court judgment and seeking review

6

and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). "[A]n element of the claim must be that the state court wrongfully entered its judgment." *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012) (applying *Exxon Mobil*, 544 U.S. at 284).

In a recent decision, the Tenth Circuit distinguished cases governed by *Rooker-Feldman*, where a federal court is jurisdictionally barred from hearing the case, from cases governed by the preclusion doctrine, where a federal court is not jurisdictionally barred from hearing the case, but the claims might fail because they are subject to either issue or claim preclusion. *See Mayotte*, 880 F.3d at 1174-75. As the Tenth Circuit explained, "[w]hat *is* prohibited under *Rooker-Feldman* is a federal action that tries to *modify or set aside* a state-court judgment because the state proceedings should not have led to that judgment." *Id.* at 1174. For example, if the federal case "alleged that a defect in the state proceedings invalidated the state judgment," the case would be jurisdictionally barred under *Rooker-Feldman*. *Id.* at 1174-75. However, a claim seeking relief that is "inconsistent" with the state court judgment is "the province of preclusion doctrine." *Id*.

### III. ANALYSIS

Defendants argue that the *Rooker-Feldman* doctrine deprives the Court of subject-matter jurisdiction over this case. Docket No. 72 at 6-9; Docket No. 75 at 4-6. The Court addresses *Rooker-Feldman* "before turning to the merits of the case" because it implicates the Court's subject matter jurisdiction. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010). The Court "independently consider[s]

7

each claim against the backdrop of the *Rooker-Feldman* doctrine." *Flanders v. Lawrence (In re Flanders)*, 657 F. App'x 808, 814 (10th Cir. 2016) (unpublished).

### A. The First and Second Claims (RICO)

#### 1. *Rooker-Feldman Doctrine*

Defendants argue that plaintiff's claims are barred by the *Rooker-Feldman* doctrine because her claims "attempt[] to challenge the results of several prior state court criminal cases." Docket No. 72 at 7. Defendants contend that, to grant plaintiff relief, the Court would need to conclude that "the state court proceedings were infected by a purportedly illegal scheme." *Id*.

The Court does not agree that plaintiff's RICO claims are barred by *Rooker-Feldman*. The core of plaintiff's RICO claims is that Carlson, her ex-husband, conspired with the other defendants to have plaintiff arrested in December 2013. *See* Docket No. 68 at 27, ¶ 83 (describing plaintiff's arrest and subsequent imprisonment as "the heart of this case"). The basis for her arrest may have already been litigated in state court proceedings. However, "[a]ttempts merely to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles, rather than *Rooker-Feldman*." *In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012). Plaintiff does not request that the Court vacate her state convictions and her claimed relief is not predicated on the Court invalidating rulings or orders of a state judge. *See Mayotte*, 880 F.3d at 1174-75. Although her requested relief – an award of money damages based on the consequences of her convictions – would "presumably conflict with the judgment of conviction," that inconsistency "implicates preclusion rather than the *Rooker-Feldman* doctrine." *See Cowan v. Hunter*, 2019 WL 413745, at *2 (10th Cir.

8

Feb. 1, 2019) (citing *Mayotte*, 880 F.3d at 1174-75). Accordingly, the *Rooker-Feldman* doctrine does not apply.

### 2. Failure to State a Claim

Plaintiff brings claims under RICO for money damages and equitable relief. Docket No. 68 at 74-76, ¶¶ 337-45. In order to state a claim under RICO, plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *See Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010). "A pattern of racketeering activity must include at least two predicate acts." *Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007) (quotation omitted). The Court finds that plaintiff has failed to adequately allege a pattern of racketeering because, even if she adequately alleges two predicate acts, the complaint "fails to allege sufficient continuity to sustain a RICO claim." *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009).

To establish a pattern of racketeering activity, a plaintiff must show that (1) the racketeering predicates are "related" and (2) they "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). This second "continuity" requirement refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id*. at 241. In evaluating continuity, courts consider (1) the duration of the related predicate acts, and (2) the "extensiveness" of the RICO enterprise's scheme, with the goal of "achieving a natural and commonsense result." *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543-44 (10th Cir. 1993). An alleged racketeering scheme "directed at one individual with no potential to extend to other persons or entities" does not satisfy the continuity requirement. *SIL-FLO, Inc. v. SFHC, Inc.*, 917

9

F.2d 1507, 1516 (10th Cir. 1990) (recognizing that, "[i]n enacting the RICO statute, 'Congress was concerned . . . with long-term criminal conduct'" (quoting *Northwestern Bell*, 492 U.S. at 242)); *see also Pagel v. Wash. Mut. Bank, Inc.*, 153 F. App'x 498, 502 (10th Cir. 2005) (unpublished) ("In this circuit, it is well established that a single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing racketeering activity.").

The Court finds that plaintiff's complaint fails to establish continuity. Plaintiff alleges that the goal of the RICO enterprise is to "alienat[e] [plaintiff] from [her children], rendering her unable to earn a living." *See* Docket No. 68 at 65, ¶ 293.[4] The complaint alleges no other "persons or entities" targeted by the enterprise. *See SIL-FLO*, 917 F.2d at 1516. The complaint also lacks any indication that the alleged enterprise has any "potential" to extend to other persons or entities. *See Pagel*, 153 F. App'x at 502. Plaintiff is, according to the complaint, the only target of the alleged scheme. As in *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545 (10th Cir. 1992), "[p]laintiff[] allege[s] what is actually a closed-ended series of predicate acts constituting a single scheme . . . to establish a discrete goal [alienation and financial destruction of plaintiff]

---

[4] Although plaintiff frames the enterprise's goal slightly differently throughout the complaint, the allegation that the enterprise seeks to injure plaintiff specifically by separating her from her children and preventing her from earning a living does not change. *See, e.g.*, Docket No. 68 at 10, ¶ 4(P)(ii) (asserting the purpose of the enterprise as providing technology equipment for "Carlson's relentless campaign" against plaintiff); *id*. at 22, ¶ 57 (describing "Carlson's long-running related enterprise" of "us[ing] false criminal charges" to create the perception that plaintiff is "unfit to be the mother of [her children]"); *id*. at 67, ¶ 303 (describing a "deliberate undertaking to render [plaintiff] homeless, unemployed, unable to earn a living, and, if possible, jailed indefinitely").

directed at a finite group of individuals [plaintiff] 'with no potential to extend to other persons or entities,'" which is insufficient to establish continuity. 972 F.2d at 1556 (quoting *SIL-FLO*, 917 F.2d at 1516). Plaintiff's response brief offers only a conclusory sentence suggesting that the complaint meets the continuity requirement. *See* Docket No. 81 at 17 (describing the complaint as an "elaborate and detailed explication of the continuity . . . of the RICO" claims). As plaintiff fails to satisfy the continuity requirement, she fails to allege that defendants are engaged in "the type of activity that RICO was enacted to address." *Id*. Accordingly, both of plaintiff's RICO claims must be dismissed as to movants.[5]

## B. The Third Claim (COCCA)

The Colorado Organized Crime Control Act, Colo. Rev. Stat. § 18-17-101 *et seq.*, "was modeled after the federal RICO Act . . . and is generally interpreted according to the same principles, unless Colorado courts have expressly construed the state statute otherwise." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1126 (D. Colo. 2010).[6] In *People v. Chaussee*, 880 P.2d 749 (Colo. 1994), the Colorado Supreme Court rejected the application of the RICO "continuity" requirement to COCCA claims, concluding that "a pattern of racketeering activity can be established . . . by proving at least two acts of racketeering activity . . . that are *related to the conduct of the enterprise*." 880 P.2d at 757-58.

---

[5] Because plaintiff fails to plausibly allege a pattern of racketeering activity, the Court does not reach the other arguments offered by defendants in support of their motions to dismiss. *See* Docket Nos. 72, 75.

[6] For the same reasons discussed in Section III.A.1, the Court concludes that it has jurisdiction to hear plaintiff's COCCA claim.

Defendants Town and Broady argue that the complaint does not allege that they participated in any predicate acts or conducted an enterprise. Docket No. 72 at 10-11. Regardless of their participation, the Court finds that plaintiff does not plausibly allege the existence of an "enterprise" within the meaning of COCCA. "'Enterprise' means any individual, sole proprietorship, partnership, corporation, trust, or other legal entity or any chartered union, association, or group of individuals, associated in fact although not a legal entity, and shall include illicit as well as licit enterprises and governmental as well as other entities." Colo. Rev. Stat. § 18-17-103(2). An enterprise is "an entity separate and apart from the pattern [of racketeering] in which it engages," and its existence is proven "by evidence of an ongoing organization . . . and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Kozeny*, 115 F. Supp. 2d 1210, 1227 (D. Colo. 2000) (applying federal case law construing RICO to COCCA). The enterprise must "function as a continuing unit with an existence beyond that necessary to commit the predicate acts and have an identity distinct from that of the individual [d]efendants." *Nat'l Union*, 115 F. Supp. 2d at 1227. Plaintiff's complaint alleges that the "enterprise" is defendants' use of two businesses, Connect Skis, LLC and Apex Construction, LLC, to conduct "a continual and relentless campaign of [harassment and surveillance] of [plaintiff], for the purpose of intimidating her." Docket No. 68 at 8-9, ¶ 4 O(vi); *see also* Docket No. 81 at 18. However, the complaint is devoid of any "evidence that the various associates [of the enterprise] function as a continuing unit." *See Turkette*, 452 U.S. at 583. Broady and the Town, for example, are mentioned in the complaint only in relation to two discrete incidents: plaintiff's

December 2013 and December 2017 arrests. Plaintiff does not allege that Broady and the Town are part of any "ongoing organization" or have any affiliation with Carlson's businesses, other than conclusory statements that Broady "co-participated" in some of Carlson's actions. See Docket No. 68 at 25; see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (noting that the pleading rules "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). The only consistent "associate" of the alleged enterprise is Carlson. Accordingly, plaintiff's COCCA claim must fail as to the Town and Broady.

Plaintiff's claim against Carlson is deficient because, even assuming that Carlson's businesses can be considered to be an "enterprise," plaintiff fails to allege "conduct" of an enterprise. To satisfy the "conduct" requirement, plaintiff must allege that Carlson "conducted the affairs of the enterprise rather than simply conducting the defendant's own affairs." See George v. Urban Settlement Servs., 833 F.3d 1242, 1249 (10th Cir. 2016). Those allegations are absent here. Plaintiff's complaint pleads only that Carlson conducted his own affairs, using "information technology" provided by his business. See, e.g., Docket No. 68 at 9-10, 24, ¶¶ 4P, 66 (alleging that Carlson used the equipment to harass and "destroy" plaintiff, his ex-wife); see also Davit v. Davit, 366 F. Supp. 2d 641, 656 (N.D. Ill. 2004) (observing that the purpose of the civil RICO act is not to relitigate "divorce, probate, and family law matters").[7] Because there is no plausible allegation that Carlson conducted the affairs of an enterprise rather than

---

[7] The complaint does allege generally that Carlson's business have been "operated . . . as an unlawful enterprise," but fails to identify anyone other than Carlson who operated them. See Docket No. 68 at 44, ¶ 175.

his own affairs, the complaint fails to state a COCCA claim against Carlson.[8]  The Court will dismiss plaintiff's Third Claim against movants.[9]

### C. The Fourth Claim (42 U.S.C. §§ 1981-88)

Plaintiff claims damages under the Civil Rights Acts of 1871, 42 U.S.C. §§ 1981-88.  Plaintiff's response clarifies that her claims are brought under § 1983.  *See* Docket No. 81 at 18.  Section 1983 "provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution."  *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009).  As an initial matter, plaintiff offers no explanation of how Carlson could be liable under § 1983, as he is a private citizen not acting under color of state law.  *See* 42 U.S.C. § 1983; *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985.").  Even if there were joint action, there is no reference to 42 U.S.C. §§ 1981-88 in the complaint that plausibly relates to Carlson.

As to the Town or Broady, the only reference to the Civil Rights Acts that plausibly relates to them is plaintiff's December 30, 2017 arrest by defendants Tom

---

[8] Plaintiff's COCCA claim is also facially deficient, as plaintiff fails to designate which of the four sections of Colo. Rev. Stat. § 18-17-104 she alleges that the defendants violated.  *See Ambraziunas v. Bank of Boulder*, 846 F. Supp. 1459, 1464-65 (D. Colo. 1994) (dismissing COCCA case without prejudice for failure to plead claim with particularity).

[9] Plaintiff's Fifth Claim seeks preliminary and permanent injunctive relief based on defendants' alleged violations of RICO and COCCA.  *See* Docket No. 68 at 79, ¶ 357.  This claim, too, fails because plaintiff has failed to state a claim under either RICO or COCCA.

Halper, Kip Albanese, and Nathan Santos.[10] *See id*. at 53-55, ¶¶ 230-245. Plaintiff alleges that these individuals "used brutal and entirely unnecessary physical force to deal with [plaintiff]." *Id*. at 54, ¶ 235. As review of this claim does not implicate a state-court judgment, the Court has jurisdiction. *See Exxon Mobil*, 544 U.S. at 291. Plaintiff claims that the conduct of Albanese and Santos, who are officers employed by the Town, "was abetted by [d]efendant Broady, who failed to exercise even remotely competent command supervision." *See id*. at 54, ¶ 236.

Given that plaintiff does not plausibly allege that Broady personally participated in plaintiff's arrest, the Court construes her claim as a suit against Broady in his official capacity. A suit against a government official in his official capacity is a suit against the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Therefore, plaintiff's claim against Broady is properly analyzed as a suit against the Town. *See Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993) ("Under Colorado law municipalities and counties, not their various subsidiary departments, exist as 'bodies corporate and politic' empowered to 'sue and be sued.'") (citing Colo. Rev. Stat. §§ 31-15-101(1)(a) and (b) and 30-11-101(1)(a)).

When a claim under 42 U.S.C. § 1983 is asserted against a municipality, courts analyze "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). For the city to be responsible for the violation, the

---

[10] There is also a reference to the Civil Rights Acts related to conduct by defendants Colleen Mahoney and the Telluride R-1 District. *See* Docket No. 68 at 52-53, ¶¶ 222-28.

plaintiff must show "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015) (internal quotations omitted). Plaintiff's complaint contains no allegation that a "municipal policy or custom" led to any alleged constitutional violation. Therefore, plaintiff's § 1983 claim against the Town and Broady fails.[11]

As plaintiff's Fourth Claim does not allege a claim for which relief can be granted, the Court will grant defendants Carlson, Broady, and the Town's motions to dismiss as to the Fourth Claim.

## IV. CONCLUSION

For the reasons set forth above, it is

**ORDERED** that the Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) of Defendants Town of Mountain Village and Chris Broady [Docket No. 72] is **GRANTED**. It is further

**ORDERED** that Defendant Brian Y. Carlson's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Docket No. 75] is **GRANTED**. It is further

---

[11] Plaintiff's citation to *Cohen v. Longshore*, 621 F.3d 1311 (10th Cir. 2010), which purports to establish a "right to litigate her § 1983 claims in this Court," cannot save her claim. *See* Docket No. 81 at 16-17. The holding of *Cohen* is that "a petitioner who has no available remedy in habeas, through no lack of diligence on his part, is not barred" from pursuing a 42 U.S.C. § 1983 claim. *Cohen*, 621 F.3d at 1317. Plaintiff here is not a habeas petitioner. Even if she were, her complaint would still be legally infirm, as it fails to allege any "municipal policy or custom" that led to any alleged constitutional violation. *See Mocek*, 813 F.3d at 933.

16

**ORDERED** that plaintiff's claims against defendants Brian Carlson, Chris Broady, and the Town of Mountain Village are **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**ORDERED** that Defendants Town of Mountain Village, Colorado, Chris Broady and Brian Y. Carlson's Joint Motion to Supplement Their Motions to Dismiss [Docket No. 125] is **DENIED** as moot.

DATED March 25, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge