# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02887-PAB-STV

JULIE CARLSON,

    Plaintiff,

v.

TOWN OF MOUNTAIN VILLAGE, COLORADO;
ANTHONY MORABITO;
CHRIS BROADY;
KIP ALBANESE;
NATHAN SANTOS;
TOM HALPER;
CHRIS WHITE;
JOSHUA M. KLIMASEWISKI;
ALISIA KLIMASEWSKI;
COLLEEN MAHONEY;
TELLURIDE R-1 SCHOOL DISTRICT;
VIRGINIA ACHTER;
BRIAN Y. CARLSON;
APEX CONSTRUCTION, LLC;
CONNECT SKIS, LLC;
JOHN DOE DEFENDANTS ONE THROUGH FIVE;
MARY DOE DEFENDANTS ONE THROUGH FIVE; and
DOE INSTITUTIONAL DEFENDANTS ONE THROUGH FIVE,

    Defendants.

---

# ORDER

---

Entered By Magistrate Judge Scott T. Varholak

    This matter is before the Court on the Motion for Sanctions (the "Motion") filed by Defendants Telluride School District R-1 (the "District") and Colleen Mahoney (collectively, the "Moving Defendants") [#130], which was referred to this Court [#131]. This Court has carefully considered the Motion and related briefing, argument from the

June 4, 2019 Motion Hearing, and the entire case file. For the following reasons, the Motion is **GRANTED IN PART and DENIED IN PART**.[1]

I.  BACKGROUND

Plaintiff initiated this action on December 3, 2017. [#1] On December 26, 2017, Plaintiff filed her First Amended Complaint [#11], and the following day she filed a corrected First Amended Complaint to redact the names of minors [#12]. Neither the original Complaint nor the First Amended Complaint named the District or Ms. Mahoney as defendants. [##1, 12]

On June 17, 2018, Plaintiff filed her Motion for Leave to File Proposed Second Amended Complaint. [#53] On July 19, 2018, this Court granted that motion, but rather than accepting the proposed Second Amended Complaint that Plaintiff had proffered, the Court ordered Plaintiff to file a new Second Amended Complaint that removed certain irrelevant and especially vitriolic allegations. [#63] On August 14, 2018, Plaintiff filed her Second Amended Complaint. [#68] Plaintiff's Second Amended Complaint named the District and Ms. Mahoney as Defendants. [*Id.*] The Second Amended Complaint alleged

---

[1] The Court finds it appropriate to issue an Order pursuant to 28 U.S.C. § 636(b)(1)(A) on this non-dispositive Motion for Sanctions. *See Osuagwu v. Gila Reg'l Med. Ctr.*, No. 11CV001 MV/SMV, 2013 WL 12334166, at *1 (D.N.M. Apr. 24, 2013). The Tenth Circuit has acknowledged, without resolving, a split in authority with regard to "whether a magistrate judge may only recommend Rule 11 sanctions under § 636(b)(1)(B) . . . or may actually order such sanctions as a nondispositive pretrial matter under § 636(b)(1)(A)." *Hutchinson v. Pfeil*, 208 F.3d 1180, 1185 n. 7 (10th Cir. 2000). In the context of discovery sanctions, however, the Tenth Circuit has held that "[t]he penalty to be imposed, rather than the penalty sought by the movant, controls the scope of the magistrate's authority." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995). Because the instant Motion does not seek—nor is the Court imposing—dispositive sanctions, the Court finds that it has the authority to issue an order pursuant to Section 636(b)(1)(A).

that all Defendants, including the Moving Defendants, violated the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), the Colorado Organized Crime Control Act ("COCCA"), and the Civil Rights Act of 1871, codified as 42 U.S.C. §§ 1981-1988. [*Id.*] The Second Amended Complaint alleged wire fraud as the predicate offense for the RICO and COCCA claims. [*Id.* at ¶¶ 339-40, 348]

The Moving Defendants and Defendants Town of Mountain Village, Colorado ("Mountain Village"), Chris Broady, Tom Halper, Brian Carlson, Kip Albanese, and Nathan Santos each moved to dismiss the Second Amended Complaint. [##72, 75, 101, 106, 124] In the Motion to Dismiss filed by the Moving Defendants on December 10, 2018 (the "Moving Defendants' Motion to Dismiss"), the Moving Defendants made several arguments in support of dismissal of the claims against them. [*See generally* #101] Of relevance to the instant Motion, the Moving Defendants argued that: (1) Plaintiff lacked standing to bring RICO and COCCA claims because she did not suffer injury to business or property [*id.* at 5-7], and (2) Plaintiff did not allege that the District or Ms. Mahoney invested in, controlled, or conducted an "enterprise" through a "pattern of racketeering activity" [*id.* at 7-9]. On February 4, 2019, Plaintiff responded to the Moving Defendants' Motion to Dismiss [#111], and on February 19, 2019, the Moving Defendants filed a reply [#116].

Meanwhile, on February 19, 2019, counsel for the Moving Defendants served Plaintiff's counsel, George Allen, with a copy of the instant Motion. [#130 at 1; #130-1] Mr. Allen did not respond within the 21 days provided by Federal Rule of Civil Procedure

11(c)(2).[2] [#130 at 2] The Moving Defendants thus filed the instant Motion on March 14, 2019. [#130]

On March 25, 2019, Chief Judge Brimmer issued an order granting the Motions to Dismiss filed by Defendants Mountain Village, Broady, and Carlson. [#137] In his Order, Chief Judge Brimmer found that the Second Amended Complaint failed to plead the continuity required to establish a pattern of racketeering activity under RICO.[3] [*Id.* at 9-11] Chief Judge Brimmer likewise concluded that Plaintiff failed to plausibly plead either a COCCA or Section 1983 claim.[4] [#137 at 11-16] The same day Chief Judge Brimmer issued his order dismissing Defendants Mountain Village, Broady, and Carlson [*id.*], Plaintiff filed a Notice of Dismissal of the instant Action [#138]. As a result of the Notice of Dismissal, the claims against the Moving Defendants were dismissed without prejudice. [#141]

On April 13, 2019, Plaintiff filed her Response to the instant Motion. [#143] In the Response, Plaintiff requested a hearing on the Motion. [*Id.* at 8] On April 26, 2019, the Moving Defendants filed their Reply. [#148] On May 3, 2019, this Court granted Plaintiff's request for a hearing [#151], and on June 4, 2019, this Court held a hearing on the Motion

---

[2] Rule 11(c)(2) includes a "safe-harbor" provision, pursuant to which a party seeking Rule 11 sanctions must "serve a copy of its Rule 11 motion on the other party and . . . give that party an opportunity (generally 21 days) to withdraw or correct the challenged document before filing the sanctions motion with the court." *Mellott v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 888 (10th Cir. 2012).

[3] Because Chief Judge Brimmer found that Plaintiff had failed to plausibly allege a pattern of racketeering activity, he did not reach the other arguments raised by Defendants in support of dismissing the RICO claim. [#137 at 11 n.5]

[4] Plaintiff had clarified that her Civil Rights Act of 1871 claim was brought under Section 1983. [#137 at 14; *see also* #81 at 18]

[##172, 187]. Mr. Allen appeared in person and Plaintiff appeared telephonically for the hearing. [*Id.*] Plaintiff also submitted an additional declaration, dated June 3, 2019, in support of her opposition to the Motion. [#171] Since the hearing, Plaintiff has submitted both an additional Supplemental brief in opposition to the Motion (the "Supplement") [#180], and additional documentation for the Court's consideration [## 179, 181, 182].

## II.     JURISDICTION

In her response to the Motion, Plaintiff relies upon a 1996 decision from the Middle District of Florida to argue that "a party that has voluntarily withdrawn the offending Complaint is no longer subject to sanctions, as the jurisdiction of the District Court has terminated." [#143 at 4 (citing *Morroni v. Gunderson*, 169 F.R.D. 168, 171 (M.D. Fla. 1996))] Contrary to Plaintiff's representation, however, the *Morroni* decision did not address the court's jurisdiction to impose Rule 11 sanctions following the voluntary dismissal of a complaint. Instead, the court in *Morroni* merely held that, pursuant to the safe-harbor provision found in Rule 11(c), "a party who seeks Rule 11 sanctions based upon allegations in a complaint, cannot wait until the action has been voluntarily dismissed by the opposing party because the party who voluntarily dismisses a case has withdrawn the offending pleading by dismissing the case." 169 F.R.D. at 171. The *Morroni* decision thus has no applicability here, because the defendants in *Morroni* did not file their motion for Rule 11 sanctions until two months after the plaintiffs had voluntarily dismissed their claims, whereas here, Plaintiff did not voluntarily dismiss her claims until after the Moving Defendants filed the instant Motion and thus after the safe-harbor period had expired. Moreover, the Tenth Circuit has held that even when a court

5

lacks subject-matter jurisdiction over the substantive merits of a case, such as by the filing of a notice of voluntary dismissal, "it retains the inherent authority to issue orders on matters collateral to the merits and to conduct sanction proceedings and to impose any sanction for abusive conduct for which sanctions are authorized by the federal rules of procedure or federal statutes, including awarding costs or attorney fees, imposing punishment for criminal contempt, and issuing sanctions under Rule 11." *Lundahl v. Halabi*, 600 F. App'x 596, 605–06 (10th Cir. 2014).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 11(b) provides:

By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

  (1)  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

  (2)  the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

  (3)  the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

  (4)  the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

If the Court determines that Rule 11(b) has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "In deciding whether to impose

Rule 11 sanctions, a district court must apply an objective standard; it must determine whether a reasonable and competent attorney would believe in the merit of an argument." *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am. ("Dodd")*, 935 F.2d 1152, 1155 (10th Cir. 1991); *see also Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019) (explaining that court "evaluate[s] [an attorney's] conduct under a standard of objective reasonableness— whether a reasonable attorney admitted to practice before the district court would file such a document" (quotation omitted)). A showing of bad faith thus is not required. *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990) ("A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances."). In ruling on a motion for sanctions pursuant to Rule 11(c), "the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2).

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Sanctions under section 1927 are appropriate where an attorney's conduct 'manifests intentional or reckless disregard of the attorney's duties to the court,' . . . or where 'an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted.'" *Loncar v. Western Peak, LLC*, 08-cv-01592-PAB-CBS, 2011 WL 1211522, at *3 (D. Colo. Mar. 30, 2011) (first quoting *Braley v. Campbell*, 832 F.2d 1504,

7

1512 (10th Cir. 1987) (en banc), then quoting *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998)). Sanctions may be awarded pursuant to Section 1927 even in the absence of bad faith. *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008). As the Tenth Circuit has explained, "[t]o excuse objectively unreasonable conduct by an attorney would be to state that one who acts with 'an empty head and a pure heart' is not responsible for the consequences." *Braley*, 832 F.2d at 1512 (quotation omitted).

## IV. ANALYSIS

As noted above, Plaintiff's Second Amended Complaint asserted three causes of action against the Moving Defendants: (1) violation of RICO; (2) violation of COCCA; and (3) violation of Plaintiff's civil rights pursuant to Section 1983. [#68, #137 at 14] By seeking a sanction in the form of an award for *all* of their attorneys' fees in this lawsuit, the Court understands the Moving Defendants to challenge all three of Plaintiff's claims under Rule 11 and Section 1927.

The Tenth Circuit has "specifically held that proper application of Rule 11 requires evaluating claims individually for sanctions purposes." *Kearney v. Dimanna*, 195 F. App'x 717, 723 (10th Cir. 2006) (citing *Dodd*, 935 F.2d at 1158). As a result, "[e]ach claim must be individually evaluated and the merit, or potential merit, of one legal claim does not diminish the command of Rule 11 that each claim have the necessary legal support." *Id.* (emphasis omitted). "The presence of a single frivolous or groundless claim, however, may not always mandate Rule 11 sanctions," such as where a frivolous claim can be "easily disposed of by the opposing party." *Dodd*, 935 F.2d at 1158. The Court thus

8

evaluates the Moving Defendants' request for sanctions individually for each of the three claims asserted against the Moving Defendants in the Second Amended Complaint.[5]

### A. The RICO Claim

In their Motion, the Moving Defendants seek sanctions pursuant to both Rule 11 and Section 1927, because "[a] reasonable inquiry by Mr. Allen before signing and filing the [Second Amended Complaint] would have left no doubt that Plaintiff's RICO . . . claims against [the Moving Defendants] are frivolous and have no chance of success." [#130 at 9] More specifically, the Moving Defendants first argue that a reasonable inquiry into RICO law would have shown that there was no reasonable argument that Plaintiff had standing to pursue her RICO claims. [*Id.* at 5-7] Second, the Moving Defendants argue that a reasonable inquiry into RICO law would have shown that there was no reasonable argument that the Moving Defendants had engaged in a "pattern of racketeering activity." [*Id.* at 7-8] The Court considers each argument in turn.

#### i. Standing

"[A] plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of § 1962." *Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007) (quotation omitted). The Tenth Circuit has held that "injury to . . . reputation, dignity and emotional damages are not the type of injuries

---

[5] The Court finds this same claim-by-claim analysis appropriate for consideration of the Moving Defendants' request for sanctions pursuant to Section 1927, particularly because the arguments in support of the imposition of sanctions in the Motion do not distinguish between Rule 11 and Section 1927.

9

redressable by . . . RICO which [is] expressly limited to injuries to 'business or property.'" *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006).

In their Motion, the Moving Defendants argue that "Plaintiff's alleged injuries resulting from the acts of the [Moving Defendants] include civil rights violations, damage to reputation, and being humiliated and embarrassed," and none of these is "redressable by RICO." [#130 at 6 (citing #68 at ¶¶ 214, 223, 226, 227)] The Moving Defendants further argue that any allegation that Plaintiff's business or property was injured by the acts of the Moving Defendants necessarily would be frivolous, because "[t]he only conduct of [the Moving Defendants] at issue is: (1) Ms. Mahoney prohibiting Plaintiff from entering Telluride Elementary School during the 2014-2015 school year due to the court-issued Protection Order, and (2) the District allegedly 'monitoring' and 'surveilling' Plaintiff when she was on school property during the 2017-2018 school year." [*Id.*] The Court disagrees that the allegations of misconduct by the Moving Defendants in the Second Amended Complaint are so limited. For example, Plaintiff alleges that the Middle School Principal agreed to monitor and surveil Plaintiff as part of "an exchange of fraudulent emails and tests" involving District employees that violated the federal wire fraud law, 18 U.S.C. § 1343 [#68 at ¶ 225], and that District employees "were all too willing to go along with [Plaintiff's ex-husband] Brian Carlson's deliberate scheme to limit, humiliate, and embarrass [Plaintiff], thus damaging her in the very small Telluride community" [*id.* at ¶ 227]. The Second Amended Complaint further alleges that the Moving Defendants "themselves violate[d] the wire fraud and mail fraud [laws] by their actions in passing on, and republishing Brian Carlson's false calumnies against [Plaintiff]." [*Id.* at ¶ 61]

10

The Court thus disagrees with the Moving Defendants' contention that the only injuries relevant for purposes of assessing Plaintiff's RICO claim against them are those that were caused by the Moving Defendants' alleged actions in allegedly prohibiting Plaintiff from entering the school during the 2014-2015 school year and monitoring and surveilling Plaintiff's visits to the school during the 2017-2018 school year. Moreover, as alleged participants in a RICO enterprise, the Moving Defendants would be jointly and severally liable for all injuries resulting from the enterprise's violations, not just those injuries directly caused by the Moving Defendants' own actions. *See, e.g.*, *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 325 (6th Cir. 2019) ("If a plaintiff establishes that multiple defendants participated in a RICO enterprise, then the defendants will be jointly and severally liable for all damages resulting from the enterprise's RICO violations."); *United States v. Philip Morris USA*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004) ("Every circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations.").

Chief Judge Brimmer interpreted the Second Amended Complaint as alleging a RICO enterprise aimed at "injur[ing] [P]laintiff specifically by separating her from her children and preventing her from earning a living." [#137 at 10 n.4] For example, Plaintiff alleges that Mr. Carlson, with necessary assistance from all of the other Defendants, "achieve[d] the deplorable successes he has had in causing [Plaintiff] to be jailed, causing her to be unable to pursue [her] career as a psychotherapist, and now unable even to revive and pursue her business as a licensed massage therapist, and lifestyle coach."

11

[#68 at ¶ 303] As part of her damages for the RICO claim, Plaintiff seeks "damages for loss of her licensed massage and lifestyle coaching business." [*Id.* at ¶ 341]

Although these allegations may ultimately have proved to be insufficient or too conclusory under Federal Rule of Civil Procedure 12(b)(6) to allege standing to assert a RICO claim, the Court does not find the alleged deficiency in Plaintiff's allegations of standing to rise to the level of warranting a sanction under Rule 11. *See, e.g., Abrams v. Felix (In re Miller)*, 414 F. App'x 214, 218 (11th Cir. 2011) (finding that "many arguments which might support a motion to dismiss would fail to provide a sufficient basis for a motion for sanctions"); *Exec. Consultative Servs. Inc. v. Bernstein*, No. SACV1101432CJCANX, 2013 WL 12250961, at *1 (C.D. Cal. Mar. 6, 2013) ("The failure to state a claim alone is not sufficient to warrant Rule 11 sanctions; if it were, every successful motion to dismiss would warrant the imposition of sanctions.").

### ii. Pattern of Racketeering Activity

"To successfully state a RICO claim, a plaintiff must allege four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 677 (10th Cir. 2005) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The Moving Defendants argue that a reasonable inquiry into RICO law would have demonstrated to Mr. Allen that there is no reasonable argument that the Moving Defendants engaged in a "pattern of racketeering activity." [#130 at 7-8]

First, relying on their contention that the Second Amended Complaint only alleges that the Moving Defendants (1) prohibited Plaintiff from entering the school during the

12

2014-2015 school year and (2) monitored and surveilled Plaintiff's visits to the school during the 2017-2018 school year, the Moving Defendants argue that none of their alleged conduct constitutes "racketeering activity." [*Id.* at 7] As explained above, however, the Court rejects this limited reading of the Second Amended Complaint. The Second Amended Complaint expressly alleges that the Moving Defendants violated the federal wire fraud law, 18 U.S.C. § 1343.[6] [#68 at ¶¶ 61, 225] "Racketeering activity" is defined under RICO to include wire fraud pursuant to Section 1343.[7] *See* 18 U.S.C. § 1961(1).

Second, the Moving Defendants argue that, even if the Second Amended Complaint adequately alleges that the Moving Defendants engaged in racketeering activity, Plaintiff has not and could not reasonably allege a *pattern* of racketeering activity. [#130 at 7-8] To establish a pattern of racketeering activity, the plaintiff must show both "relationship" and "continuity"—*i.e.*, "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). "'Continuity' is both a closed- and open-ended concept: closed-ended referring to a closed period of repeated conduct and open-ended referring to conduct that by its nature projects into the future with a threat of repetition." *Resolution Tr. Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a

---

[6] The Motion does not challenge the contention in the Second Amended Complaint that the Defendants' alleged communications containing false information about Plaintiff constituted wire fraud and thus, for purposes of this Motion, the Court does not analyze whether Plaintiff had a reasonable basis to allege a RICO claim based upon these alleged acts of wire fraud.

[7] "Racketeering activity" under COCCA includes "[a]ny conduct defined as 'racketeering activity' under [RICO]." Colo. Rev. Stat. § 18-17-103(5)(a).

series of related predicates extending over a substantial period of time" but "[p]redicate acts extending over a few weeks or months are insufficient to show closed-ended continuity." *Id.* A closed-ended series of predicate acts is not sufficient to support a finding of a pattern of racketeering activity, however, where those acts "constitute[ ] a single scheme to accomplish 'one discrete goal,' directed at one individual with no potential to extend to other persons or entities." *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990). Open-ended continuity "may be established by showing that the predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit, or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise." *Resolution Tr. Corp.*, 998 F.2d at 1543. "Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989).

Here, as Chief Judge Brimmer has already found, the Second Amended Complaint "fails to establish continuity." [#137 at 10] The Second Amended Complaint "alleges no other persons or entities targeted by the enterprise" and "lacks any indication that the alleged enterprise has any potential to extend to other persons or entities." [*Id.* (quotations omitted)] Rather, Plaintiff's RICO claim alleges "a closed-ended series of predicate acts, [that] constitute[ ] a single scheme to accomplish 'one discrete goal,' directed at one individual with no potential to extend to other persons or entities." *SIL-FLO, Inc.*, 917 F.2d at 1516. Plaintiff's allegations thus clearly do not support the continuity element of a RICO claim.

14

Notably, Plaintiff's responses to Defendants' motions to dismiss raising the continuity argument do not even attempt to address the continuity deficiency in Plaintiff's RICO claim. [#81 at 17-18; #111 at 5] Similarly, Plaintiff's briefing in opposition to the instant Motion fails to offer any argument in support of a finding of continuity or to attempt to explain why a reasonable and competent attorney would believe in the merit of a RICO claim under these facts. [##143, 180] Mr. Allen's failure to address the continuity requirement is particularly troublesome given that he has previously been sanctioned pursuant to Section 1927 by Chief Judge Brimmer after he asserted, without an adequate factual basis, a RICO claim that was dismissed for failure "to allege any threat of continuing illegal activity" or a pattern of misconduct.[8] *Loncar*, 2011 WL 1211522, at *5. In *Loncar*, Chief Judge Brimmer expressly found that "it is improper for an attorney to file a RICO claim without factual support on the hope that discovery will support it." *Id.*

Here, Plaintiff has failed to offer any factual support for a finding of continuity. At the hearing on the Motion, Mr. Allen admitted that he doesn't "know whether [Plaintiff] has a RICO claim or not until [he] ha[s] . . . access to [Defendants'] records." [#187 at 21:22-25] In response to this Court asking Mr. Allen why he did not even address the merits of the Moving Defendants' arguments against Plaintiff's RICO claim in the briefing, Mr. Allen responded: "The reason I can't get from A to B, and I recognize where the Court is struggling, and it's a struggle I certainly had, is that [Defendants] are the sole custodian[s]

---

[8] In determining the appropriateness of sanctions under Rule 11, the Tenth Circuit has advised that the Court should consider, among other factors, "the offending party's history, experience, and ability; the severity of the violation; and the risk of chilling zealous advocacy." *King v. Fleming*, 899 F.3d 1140, 1155 (10th Cir. 2018).

of that information and they've destroyed it, purposefully destroyed it, destroyed it as a matter of policy." [*Id.* at 44:12-24] It thus appears that, contrary to Chief Judge Brimmer's holding in *Loncar*, Mr. Allen asserted a RICO claim here "without factual support on the hope that discovery will support it." 2011 WL 1211522, at *5.

The Court thus finds that a reasonable and competent attorney would not have believed in the merits of a RICO claim at the time the Second Amended Complaint was filed and that Mr. Allen unreasonably and vexatiously multiplied the proceedings by continuing to pursue the RICO claim after Defendants had filed motions to dismiss that claim and even after he was served with the instant Motion. Accordingly, the Motion is GRANTED to the extent it seeks sanctions based upon Plaintiff's assertion and continued prosecution of the RICO claim.

### B. The COCCA Claim

The Moving Defendants' Motion does not make any arguments—or cite any legal authority—specific to Plaintiff's COCCA claim. [#130 at 5-8] Instead, the Moving Defendants rely upon the same arguments made with regard to the RICO claim and merely state that "RICO and COCCA are interpreted according to the same principles." [*Id.* at 5] Thus, for the same reasons the Court found the standing argument insufficient to support an award of sanctions with regard to the RICO claim, the Court is unpersuaded that sanctions are warranted based upon Plaintiff's purported lack of standing to assert a COCCA claim.

With regard to the Moving Defendants' pattern of racketeering activity argument, despite the Moving Defendants' assurance that "the same principles" apply under both

16

RICO and COCCA, the legal requirements for establishing a pattern of racketeering activity actually are different under the two statutory schemes. As Chief Judge Brimmer explained in his Order granting the Motions to Dismiss filed by Defendants Mountain Village, Broady, and Carlson, the Colorado Supreme Court has "rejected the application of the RICO 'continuity' requirement to COCCA claims, concluding that 'a pattern of racketeering activity can be established . . . by proving at least two acts of racketeering activity . . . that are *related to the conduct of the enterprise.*'" [#137 at 11 (emphasis in original) (quoting *People v. Chaussee*, 880 P.2d 749, 757-58 (Colo. 1994))] The Moving Defendants' continuity argument thus is inapplicable to Plaintiff's COCCA claim. Although Chief Judge Brimmer found that the Second Amended Complaint failed to state a COCCA claim because Plaintiff failed to "plausibly allege the existence of an 'enterprise' within the meaning of COCCA" [#137 at 12], the Moving Defendants do not argue here that they are entitled to sanctions based upon that failure.

Accordingly, the Moving Defendants have not satisfied their burden of proving that a reasonable and competent attorney would not have asserted the COCCA claim or that the assertion of the COCCA claim was wholly unwarranted or manifested intentional or reckless disregard of Mr. Allen's duties to the Court. The Court thus DENIES the Motion to the extent it seeks sanctions based upon Plaintiff's assertion of the COCCA claim.

### C. The Section 1983 Civil Rights Claim

Although the Moving Defendants contend that Mr. Allen violated Section 1927 "by adding the District and Ms. Mahoney to the lawsuit and continuing pursuit of the claims after the filing of the [Moving Defendants'] Motion to Dismiss" [#130 at 9], the Moving

17

Defendants do not make any argument in the Motion that Plaintiff's assertion of the civil rights claim pursuant to 28 U.S.C. § 1983 violated Rule 11 or Section 1927. The Moving Defendants thus have failed to satisfy their burden of showing that the Plaintiff's assertion of the Section 1983 claim against them was frivolous, unreasonable, or vexatious. The Court thus DENIES the Motion to the extent it seeks sanctions based upon Plaintiff's assertion of the Section 1983 claim.

D. **Sanctions**

Based upon the above analysis, the Court finds that sanctions are appropriate under both Rule 11 and Section 1927 based upon Plaintiff's assertion of the RICO claim against the Moving Defendants. Rule 11(c)(1) authorizes a court to impose "appropriate sanction[s]" on an attorney responsible for the violation. Section 1927 authorizes a court to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" to personally satisfy the excess costs, expenses, and attorneys' fees reasonably incurred by such conduct. Sanctions under Section 1927 cannot be recovered for the filing of the complaint. *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224-25 (10th Cir. 2006).

Considering these principles, the Court concludes that Attorney Allen should be responsible for all reasonable fees and costs incurred by the Moving Defendants after December 10, 2018, the date the District and Ms. Mahoney moved to dismiss the Second Amended Complaint, that are attributable to Plaintiff's RICO claim against them. *See Loncar*, 2011 WL 1211522, at *6. Though Mr. Allen should have recognized the frivolousness of the RICO claim before that date, once these deficiencies were brought

18

to Mr. Allen's attention through the Moving Defendants' Motion to Dismiss, he was undoubtedly on notice of the frivolousness of this claim. Nonetheless, he continued to litigate this matter, thereby unreasonably multiplying these proceedings. Indeed, even when a copy of the sanctions motion was provided to Mr. Allen, he chose not to withdraw the allegations against the Moving Defendants, even though he has made little attempt to defend against the specific arguments raised by the Motion.

**V. CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED**:

(1) The Motion for Sanctions [#130] is **GRANTED IN PART AND DENIED IN PART**; and

(2) On or before **November 21, 2019**, the Moving Defendants shall file an affidavit complying with D.C.COLO.LCivR 54.3 documenting the fees and costs incurred since the filing of their motion to dismiss on December 10, 2018 that are attributable to Plaintiff's RICO claim.

DATED: November 7, 2019 BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge